IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**MCMAHAN JETS, LLC**                                                     **PLAINTIFF**

**VERSUS**                                          **CIVIL ACTION NO. 2:10cv175 KS-MTP**

**X-AIR FLIGHT SUPPORT, LLC; RIZO JET AVIATION
SERVICES, LLC; ROADLINK TRANSPORTATION, INC.;
CLIFFORD GOTTSCHALK; XAVIER M. YBARRA;
and DEFENDANTS A – F**                                         **PLAINTIFFS**

## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion to Dismiss for Lack of Jurisdiction **[#28]** filed on behalf of defendants Roadlink Transportation, Inc. ("Roadlink") and Clifford Gottschalk ("Gottschalk"). The court, having reviewed the motion, the response, the pleadings and exhibits on file and being otherwise fully advised in the premises finds that the motion is well taken and should be granted. The court specifically finds as follows:

## FACTUAL BACKGROUND

This action arises out of the sale and purchase of an airplane which McMahan now claims is defective. The transaction began in or around December 2007, when Gottschalk, a Utah resident was contacted by Mr. Rizo of Rizo Jet Aviation Services, LLC ("Rizo Jet"). Rizo informed Gottschalk that a McMahan representative had recently

seen another plane owned by Roadlink, a Utah corporation, that was in a hangar in Texas and this representative was apparently impressed with its condition and maintenance.

Rizo asked Gottschalk if Roadlink would consider selling the Cessna Citation at issue in this litigation. The Citation was still being used (approximately 200-250 hours a year) and was not listed for sale. However, in October 2007, Roadlink had acquired another airplane and it was anticipated that the Cessna Citation would not be used as much going forward. In light of the recently purchased airplane, Roadlink agreed to sell the Cessna Citation.

However, Roadlink was not willing to pay a broker's fee to Rizo for his role in approaching Roadlink at the request of McMahan to inquire about the Cessna Citation. Roadlink would only agree to enter into a contract that did not provide for a broker's fee and that was a sale to Rizo Jet. Accordingly, in January 2008, Gottschalk signed a contract on behalf of Roadlink, wherein Roadlink agreed to sell the Cessna Citation to Rizo Jet for a sales price of $1,950,000.

X-Air Flight Support, LLC ("X-Air"), a Texas company, and Xavier M. Ybarra ("Ybarra"), a Texas resident, were retained by McMahan to conduct a "pre-buy" inspection. Based upon the report prepared by Ybarra, McMahan purchased the airplane from Rizo Jet for $2,100,000. Rizo directed Gottschalk to deliver the plane directly to McMahan in Tennessee.

McMahan alleges that it was later discovered that twelve screws had been improperly drilled through the carry-through spar, thereby compromising the plane's structure. On May 28, 2010, McMahan filed its Complaint in the Circuit Court of Forrest

County of Mississippi alleging breach of contract and negligence of the defendants (collectively) in failing to find and/or report this defect; in failing to provide McMahan an airworthy aircraft; and in failing to disclose the improper involvement of mechanic Clifford Gottschalk.

The evidence reveals that "Roadlink Transportation Inc." and "Flying J Transportation Canada Inc." are two names for the same Utah corporation (the "Corporation") .  The Corporation was initially called Roadlink Transportation Inc.; had its named changed to Flying J Transportation Canada Inc.; then had its name changed back to Roadlink Transportation Inc.; and, finally, had its name changed back to Flying J Transportation Canada Inc.

The Corporation engaged in two areas of business.  First, the Corporation acquired and maintained various airplanes, including the Cessna Citation that was sold to Rizo Jet and is the subject of McMahan's Complaint.  Roadlink's airplanes were typically stored and maintained in Brigham City and Ogden, Utah.  The Corporation's other area of business involved the ownership, operation, and/or lease of semi trucks and trailers that were primarily used in connection with Canadian related petroleum product hauling business.  Each of the foregoing corporate name changes were undertaken for internal operational reasons relating to the airplane and trucking operations of the Corporation.  During all relevant times, Gottschalk served as the Director of Maintenance for the airplanes owned by Roadlink.  As the Director of Maintenance, Gottschalk served as the chief mechanic and otherwise oversaw the maintenance of the airplanes.

**STANDARD OF REVIEW AND ANALYSIS**

Roadlink and Gottschalk's motion to dismiss attacks this court's *in personam* jurisdiction. "The party invoking the jurisdiction of a federal court bears the burden of establishing the court's jurisdiction over a nonresident defendant." *Brown v. Flowers Industries, Inc.*, 688 F.2d 328, 332 (5th Cir. 1982), *cert. denied* 460 U.S. 1023, 103 S.Ct. 1275, 75 L.Ed.2d 496 (1983). When the Court does not rely on an evidentiary hearing but instead decides the motion on the basis of pleadings and exhibits on file, the party urging jurisdiction is only required to present a *prima facie* case of personal jurisdiction. *See Brown v. Flowers Industries, Inc., supra; DeMelo v. Toche Marine Inc.*, 711 F.2d 1260, 1270-71, (5th Cir. 1983), and *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).

> The allegations of the complaint except insofar as controverted by opposing affidavits must be taken as true, and all conflicts in the facts must be resolved in favor of the plaintiffs for purposes of determining whether a *prima facie* case for personal jurisdiction has been established.

*Thompson v. Chrysler Motors Corp.*, 755 F.2d at 1165, quoting *DeMelo v. Toche Marine Inc.*, 711 F.2d at 1270-71.

"Moreover all conflicts in the facts alleged in the opposing affidavits 'must be resolved in plaintiff's favor for purposes of determining whether a *prima facie* case for *in personam* jurisdiction has been established.'" *DeMelo v. Toche Marine Inc.*, 711 F.2d at 1270, (quoting *Brown v. Flowers Industries, Inc.*, 688 F.2d at 333, quoting *United States Ry. Equipment Company v. Port Huron and Detroit R.R.*, 495 F.2d 1127, 1128 (7th Cir. 1974)).

The Fifth Circuit has held that "the concept of personal jurisdiction comprises two

distinct components: amenability to jurisdiction and service of process." *DeMelo*, 711 F.2d at 1264 (other citations omitted).  Further "amenability to jurisdiction means that a defendant is within the substantive reach of a forum's jurisdiction under applicable law. Service of process is simply the physical means by which that jurisdiction is asserted." *Id.*

A nonresident defendant is subject to the personal jurisdiction of a federal court sitting in diversity to the same extent a state court sitting in the state where the federal court sits would have.  *See, Brown v. Flowers Industries Inc.*, 688 F.2d at 331.  For diversity purposes, a state standard of amenability to jurisdiction is applied based on a finding as to whether or not the state court would have had jurisdiction.  To determine jurisdiction under the state standard, the court must find that the state's long-arm statute, as interpreted by the courts of that state, applies.  *DeMelo*, 711 F.2d at 1265.  The Court must then determine that the application of the state long-arm statute in the particular case facing the court comports with the due process requirements of the 14th Amendment to the U.S. Constitution.  *Brown v. Flowers Industries Inc.*, 688 F.2d at 331-32.

As stated, there are two components to personal jurisdiction.  The service of process requirement and the amenability to jurisdiction.  The defendants have not challenged the actual physical service of process at this stage but instead by their motion challenge the amenability to the jurisdiction of this court pursuant to the service of process under the Mississippi long-arm statute.  The Mississippi statute reads in pertinent part

> Any non resident person, firm, general or limited partnership, or any foreign

> or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.  Service of summons and process upon the defendant shall be had or made as is provided by the Mississippi Rules of Civil Procedure.

Miss. Code Ann. § 13-3-57.

Section 13-3-57 is applicable to three types of nonresident defendants.  Those are, by the terms of the statute, (1) nonresidents who make a contract with a resident of the state to be performed in whole or in part within the state; (2) any nonresident who commits a tort in whole or in part in the state against a resident or a nonresident; (3) and nonresidents who are "doing business" within the state.  *See, Smith v. Temco, Inc.*, 252 So.2d 212 (Miss. 1971).

### **The Contract Prong**

Under the contract prong of the Mississippi long-arm statute a nonresident defendant must make a contract with a <u>resident</u> of Mississippi to be amenable to process.  Neither defendant is a resident of Mississippi while McMahan is.  McMahan asserts that the contract prong of the Mississippi long-arm statute is satisfied because it negotiated a contract to purchase the Cessna with the "defendants."  However, nowhere does McMahan identify any contract with Roadlink and Gottschalk.

The Court finds that the evidence clearly shows that the actual purchase agreement was between McMahan and Rizo Jet.  Roadlink sold the plane to Rizo who then entered into a sales contract with McMahan.  McMahan's argument that it had a contract with either Roadlink or Gottschalk is simply disingenuous.

**The Tort Prong**

McMahan alleges that the "defendants" committed a tort against it in the State of Mississippi. Specifically, Mcmhan claims that the plane was delivered in a defective condition to it in Mississippi. However, once again, the evidence clearly shows that the plane was delivered to Tennessee from Utah. True enough, it was delivered to a Mississippi resident in Tennessee but the facts asserted by McMahan do not comport with what actually happened.

Further, "Mississippi holds that a tort is not complete until injury occurs; if injury occurs in Mississippi then the tort occurred, at least in part, in the state for purposes of Section 13-3-57." *Cycles Limited v. W. J. Digby, Inc.*, 889 F.2d 612, 619 (5th Cir. 1989). Thus, Mcmahan contends that it was injured in Mississippi as a result of the ultimate location of the plane being here and therefore that the "defendants" have committed a tort in part in Mississippi. *See also, Smith v. Temco*, 252 So.2d at 216.

Of course, for application of Mississippi long-arm statute one must look to the place where the actual injury occurred and not at the place of the economic consequences of the injury. *See, Cycles Limited v. W. J. Digby*, 889 F.2d at 619. In this case, there are no allegations supporting the notion that any element of the alleged tort took place in Mississippi. By McMahan's own allegations, the alleged negligent inspections and other fraudulent activity occurred outside of Mississippi. *See Bryant v. Salvi*, 141 Fed.Appx. 279, 282, 2005 WL 1625319, 2 (5th Cir. 2005) (holding that where documents were prepared and executed outside of Mississippi, alleged "economic losses", were merely "consequences of the 'injury'" which actually occurred outside of Mississippi.).

### The Doing Business Prong

Finally, McMahan asserts that the long-arm statute applies because "Defendants" are doing business and/or performing services in the State of Mississippi. As to the doing business prong of the Mississippi statute;

> The Supreme Court of Mississippi holds that in order to assert jurisdiction under this aspect of the long arm statute: (1) the nonresident defendant must purposefully do some act or consummate some transaction within the state; (2) the cause of action must arise from or be connected with such act or transaction; and (3) the assumption of jurisdiction by Mississippi must not offend traditional notions of fair play and substantial justice.

*Cycles v. W. J. Digby*, 889 F.2d at 620, (other citations omitted).

McMahan contends that the first element of "doing business" is satisfied because the "Defendants" purposefully performed the act of inspecting, certifying and selling the aircraft and/or consummating a transaction in Mississippi for the sale and inspection of the aircraft in question. Thus, according to McMahan, since "there were contracts between the Plaintiff and the Defendants definitely consummated a transaction in Mississippi because parts of the contract (payment for the services) was completed in Mississippi."

The court finds that there certainly would be jurisdiction under the doing business prong if any of the allegations of McMahan were true of either Roadlink or Gottschalk. However, those allegations being contrary to the undisputed facts makes this argument fail as well.

### Due Process

The doing business prong of the Mississippi long-arm statute bears a certain resemblance to the minimum contacts requirement under the due process analysis.

Having established that service of process under the Mississippi long-arm statute was not appropriate, the Court need not necessarily consider whether the exercise of jurisdiction by this Court comports with the due process clause of the 14th Amendment and the traditional notions of substantial justice and fair play.  *See, Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162 (5th Cir. 1985).  Nevertheless, the court will conclude with that discussion as an additional basis to support the dismissal of Roadlink and Gottschalk.

> The Fifth Circuit has held that
>
> [t]he exercise of personal jurisdiction over a nonresident will not violate due process principles if two requirements are met.  First, the nonresident defendant must have purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with that forum state.  *International Shoe Company v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945), *Bullion*, 895 F.2d at 216.  And second, the exercise of jurisdiction over the nonresident defendant must not offend "traditional notions of fair play and substantial justice."  *Asahi Metal Industries Company v. Superior Court*, 480 U.S. 102, 113, 107 S. Ct. 1026, 1033, 94 L. Ed. 2d 92 (1987), (citing *International Shoe*, 326 U.S. at 316, 66 S. Ct. at 158).

*Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

The Fifth Circuit has also determined that the minimum contacts inquiry is further subdivided into those contacts which give rise to specific personal jurisdiction and those which give rise to general personal jurisdiction.

> Specific jurisdiction is appropriate when the nonresident defendant's contact with the forum state arise from, or are directly related to, the cause of action.  (citations omitted).  General jurisdiction, however, will attach, even if the nonresident defendant's contacts with the forum state are not directly related to the cause of action, if the defendant's contact with the forum state are both continuous and systematic.  (citations omitted).

*Wilson v. Belin*, 644 F.2d at 647.  Further,

9

> if a nonresident defendant has sufficient related or unrelated minimum contacts with the forum, we must then consider whether the "fairness" prong of the jurisdictional inquiry is satisfied. (citations omitted). The Supreme Court has stated that the "fairness" of requiring a nonresident to defend a suit in a distant forum is a function of several factors, including "the interest of the forum state."

*Id.*

The factors which have been enunciated by the Supreme Court to be considered in the fairness inquiry are:

> [T]he burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) "the interstate judicial system's interest in obtaining the most efficient resolution of the controversies"; and (5) "the shared interest of the several States in furthering fundamental substantive social policies."

*Id.* at fn. 3.

Roadlink and Gottschalk each assert that neither has the requisite minimum contacts to satisfy the due process requirements of the 14th Amendment. In this case, there is only one conceivable basis for the exercise of specific personal jurisdiction over Defendants in Mississippi—Roadlink's sale of the Cessna Citation to Rizo Jet, which then subsequently sold the Cessna Citation to McMahan. This court finds that even this contact falls far short of meeting the minimum contacts prong.

The case *Growden v. Ed Bowlin and Associates, Inc.* is especially instructive. 733 F.2d 1149 (5th Cir. 1984). *Growden* was a Louisiana wrongful death diversity action arising from the crash of a Cessna aircraft that killed both occupants. *Id.* at 1150. The survivors filed suit against, among others, Ed Bowling and Associates, Inc.—the Georgia corporation that had sold the aircraft to one of the decedents. *Id.* In February 1982, Tom Growden (one of the decedents) saw one of two advertisements that Bowlin placed in national publications concerning the sale of the Cessna. Growden contacted Bowlin

10

regarding the Cessna and the parties met in Alabama for a demonstration of the plane. *Id.* Growden purchased the plane in Georgia and flew it back to Louisiana, his home state. "Before [Growden] left Georgia, they noticed a flickering alternator light and Bowlin agreed for any repairs to remedy the problem after arrival in Louisiana." *Id.* Just over one week later, on the first flight after the plane arrived in Louisiana, the plane lost power and crashed.

After being named in the wrongful death action, Growden filed a motion to dismiss for lack of personal jurisdiction. The trial court denied the motion. On appeal, the Fifth Circuit looked "to the jurisdictional facts in the instant case to determine whether Bowlin had the necessary minimum contacts with Louisiana to comport with due process requirements." *Id.* The Court made the following observations about Bowlin's potential contacts with Louisiana:

> Bowlin does not maintain an office, agent, or place of business in Louisiana. It has never advertised in local Louisiana media; it has no listing in any Louisiana telephone directories. There is no evidence that it has ever made any sales to residents of Louisiana other than the sale to Growden in this case. There is no evidence that it has ever sent representatives, inspectors, or repair or service personnel to Louisiana. Plaintiffs seek to base jurisdiction on the one isolated sale in the instant case. Regarding this sale, Bowlin did not reach out to Growden in Louisiana for business. Instead, it was Growden who, after seeing an advertisement in a national publication, communicated by telephone with Bowlin in Georgia about purchasing the plane. Bowlin and Growden met in Alabama-not Louisiana-for a demonstration of the plane. They next met in Georgia where payment was made and where the Growdens physically took possession of the plane and flew it themselves to Louisiana. The only face-to-face discussion about the sale took place in Alabama and Georgia, outside of the forum state.

*Id.* at 1151.

The plaintiffs contended that Bowlin had sufficient contacts to satisfy due process because "(1) Bowlin placed advertisements in two national publications, (2) delivery

occurred in Louisiana, (3) Bowlin promised to pay for any repairs to remedy the flickering alternator light, (4) Bowlin knew the plane would be home-based in Louisiana, (5) the plane was paid for with two checks drawn on a Louisiana bank." *Id.* The Fifth Circuit, however, found that none of these "contacts" was sufficient to find that Louisiana could exert personal jurisdiction over Bowlin.

In this case, neither of the moving Defendants have any "contacts" with the forum state, Mississippi. The record shows that from its incorporation through the filing of this matter, the Corporation has never been registered to do business in the State of Mississippi. And, according to the Secretary of the Corporation, the Corporation has never maintained an office, agent, or place of business in Mississippi, and has not had any telephone number, mailing address, real estate, or other property in Mississippi. With respect to Gottschalk, he has never set foot in the state of Mississippi.

In the instant case Roadlink contracted with a Texas corporation to sell the Cessna Citation unlike in *Growden* where the sale was from the defendant to the plaintiff's decedent. Further, significantly in this case, Roadlink nor Gottschalk ever solicited the sale of the Cessna Citation, but were approached by Rizo, a Texas broker on behalf of a Mississippi entity. The plane was inspected in Texas by separate entities hired by McMahan (defendants X-Air and Ybarra) and was delivered to McMahan in Tennessee. The facts of this case fall well short of the minimum contacts standard.

The instant case is an action brought against Roadlink, a Utah company and Gottschalk, a Utah resident with no meaningful contact with the Mississippi forum. Independent of the result of the minimum contacts analysis, the exercise of jurisdiction over these defendants in Mississippi does not comport with traditional notions of fair play and substantial justice. "Once it has been decided that a defendant purposefully

12

established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).  The factors relevant to a fair play/substantial justice inquiry that are implicated in this case are 1) the burden on the defendants, 2) the forum State's interest in adjudicating the dispute, and 3) the plaintiff's interest in convenient and effective relief. *See id.* at 477 (listing factors).

The factual context of this dispute demonstrates that the exercise of jurisdiction over either Roadlink or Gottschalk in Mississippi would be unreasonable.  The moving Defendants have done nothing to purposefully interject themselves into Mississippi or purposefully avail itself of the benefits of doing business in Mississippi.  The burden on these Defendants, a small business and a nonresident who have not directed any conduct at Mississippi, of litigating in a foreign forum would be substantial. Mississippi can have little particularized interest in the adjudication of this dispute, especially given the lack of contact between Roadlink and Gottschalk, and the forum.  While certainly McMahan's preference is to litigate in Mississippi, this preference cannot outweigh the fundamental inequity of forcing non-resident defendants with no activity in Mississippi to defend themselves in Mississippi.  Roadlink's sale of the aircraft to the Texas corporation which then sold the Cessna Citation to the Mississippi corporation at a profit does not establish a minimum contacts sufficient to satisfy due process.  The exercise of jurisdiction over Defendants Roadlink and Gottschalk does not comport with traditional notions of fair play and substantial justice.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion to Dismiss for

Lack of Jurisdiction **[#28]** filed on behalf of defendants Roadlink Transportation, Inc. and Clifford Gottschalk is granted and the Complaint filed in this matter is dismissed without prejudice as to these two defendants.  A separate judgment shall be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

      SO ORDERED AND ADJUDGED this the 7th day of January, 2011.

                                   *s/Keith Starrett*
                                   UNITED STATES DISTRICT JUDGE